**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALLEN VICKS, #426156** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-313** |
| **STATE OF LOUISIANA** | **SECTION "L"(5)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

**Procedural History**

Petitioner, Allen Vicks, is a convicted inmate housed at the Louisiana State Penitentiary in Angola, Louisiana.    In July 1999, he was charged by grand jury indictment with one count of aggravated rape of a child under 12 and one count of aggravated kidnapping.[1]    After a judge trial held on March 22, 2000, he was found guilty as charged of

---

[1] ECF No. 22-2 at 71, Grand Jury Indictment, Criminal District Court for the Parish of Orleans.    *See also* ECF No. 22-1 at 71.

aggravated rape and guilty of the lesser offense of second-degree kidnapping.[2]   On April 3, 2000, he was sentenced, respectively, to concurrent terms of life imprisonment without the benefit of probation, parole or suspension of sentence and 20 years' imprisonment, with the first two years to be served without benefit of probation, parole or suspension of sentence.[3] The trial court denied his motion to reconsider the sentence and his motion for appeal was granted.

On direct appeal, Vicks asserted three claims for relief: (1) the trial court erred in failing to suppress the victim's suggestive identification; (2) the evidence was insufficient to support the conviction for aggravated rape; and (3) the life sentence was excessive.   On September 26, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed the convictions and sentences. [4]   On November 27, 2002, the Louisiana Supreme Court denied his application for writ of certiorari.[5]

On December 3, 2002, the record reflects an entry that states that Vicks filed a motion for post-conviction relief which was "denied this day."   The record also indicates that defendant filed a motion for production of the district attorney file which the court denied

---

[2]  ECF No. 22-2 at 91, Trial Minute Entry, 3/22/2000.

[3]  ECF No. 22-2 at 93, Sentencing Minute Entry, 4/3/2000; *see also* Sentencing Transcript, ECF No. 22-2 at 315.

[4]  *State v. Vicks*, 2000-KA-1700 (La. App. 4 Cir. 2001), 798 So.2d 308; *see also* ECF No. 22-2 at 3, Fourth Circuit Opinion.

[5]  *State ex rel. Vicks v. State*, 2002-KH-0199 (La. 2002), 831 So.2d 276.

and directed him to direct his request to that agency.    The minute entry also reflects that Vicks filed a motion for post-conviction DNA testing and that the court ordered the district attorney to respond by August 22, 2003, setting a status hearing for that date.[6]    However, the record contains no such pleadings from 2002.    A minute entry for August 22, 2003, reflects that Vicks did not appear and the status hearing was reset.

On or about January 22, 2003, Vicks purportedly submitted a uniform application for post-conviction relief to the state district court in which he asserted three grounds for relief: (1) he was denied due process and equal protection by the unconstitutional selection of grand jury forepersons in Orleans Parish and the trial court lacked subject matter jurisdiction; (2) his convictions for aggravated rape and second degree kidnapping violated double jeopardy principles; and (3) trial counsel rendered ineffective assistance because he did not subpoena and secure an expert witness or present a valid defense.[7]    The record also reflects that on or about January 28, 2003, Vicks submitted a "Motion to Preserve any and all Physical Evidence Collected and Held in Custody of the State" and a "Memorandum in Support of Motion for Post-Conviction DNA Testing."[8]

---

[6] ECF No. 22-1 at 53, Minute Entry, 12/3/2002. *See also* ECF No. 22-1 at 2, Docket Master Entry, 12/3/2002.

[7] The record does not include the original PCR application.    *But see* ECF No. 22-1 at 196, Letter from Vicks dated 4/21/2003 (received by the court June 3, 2003), attaching an amended Uniform Application for Post-Conviction Relief and a Supplemental Petition with exhibits. In his letter, Vicks seeks an update regarding the status of his PCR submitted on January 22, 2003.

[8] ECF No. 22-1 at 362, 365.    Along with those motions, he filed another Motion for

On or about April 21, 2003, Vicks filed a supplemental petition and exhibits.[9]   On April 29, 2003, the state district court issued a judgment acknowledging receipt and filing of the supplemental petition; however, it noted that the court had not received his referenced January 2003 post-conviction relief application and would consider it when submitted.[10] On June 17, 2003, Vicks submitted his application for post-conviction relief raising the three claims.[11]   On July 18, 2003, the state district court denied relief on the merits.[12]   On September 26, 2003, the Louisiana Fourth Circuit denied his related supervisory writ application.[13]   On November 15, 2004, the Louisiana Supreme Court denied relief.[14]

Meanwhile, on September 29, 2003, the State filed a response to the motion for DNA

---

Production of the District Attorney's files.   ECF No. 22-1 at 524.

[9]   *See* n. 7, *supra*.

[10]   ECF No. 22-1 at 212, Judgment, 4/29/2003.

[11]   ECF No. 22-1 at 319, Uniform Application for Post-Conviction Relief with Memorandum in Support signed on June 17, 2003.   Vicks attaches an original undated Uniform Application for Post-Conviction Relief which he allegedly filed in January 2003.   *Id.* at 355.   He mistakenly checked the box for having pleaded guilty and amended the petition to correct that statement.   On June 17, 2003, he also submitted a Motion for Production of District Attorney's files.   ECF No. 22-1 at 78.   The motion was denied.   See ECF No. 22-1 at 85.

[12]   ECF No. 22-1 at 83, State District Court Judgment denying PCR, 7/18/2003. Jason R. Williams served as Judge Pro Tempore for Section "B" and signed the Judgment. This served as the basis for the recusal of the Orleans Parish District Attorney's Office in this case.   ECF No. 14, 17, Ex Parte/Consent Motion for Recusal and Order granting Motion.

[13]   ECF No. 22-3 at 2, *State v. Vicks*, 2003-K-1434 (La. App. 4 Cir. Sept. 26, 2003).

[14]   *State ex rel. Vicks v. State*, 2003-KH-3237 (La. 2004), 887 So.2d 473; *see also* ECF No. 22-6 at 39.

4

testing and the motion to preserve evidence.[15]   The record reflects that a blood sample was taken from Vicks for DNA testing and an order for DNA testing was signed by the State and counsel for Vicks on November 10, 2003.[16]   On or about January 10, 2004, Vicks submitted a motion for enforcement of court order – to no avail.[17]   On March 11, 2004, having received no DNA results, Vicks filed a petition for mandamus with the Louisiana Fourth Circuit Court of Appeal.[18]   On April 19, 2004, the court of appeal granted the writ for the sole purpose of transferring the motion to enforce the court's judgment to the state district court for consideration.[19]

On or about July 7, 2004, Vicks filed a motion to correct illegal sentence in the state district court.[20]   The state court record does not reflect that a ruling was made on that motion.

In 2005, the trial court appointed new counsel for Vicks.[21]   On February 10, 2005,

---

[15]   ECF No. 22-1 at 88, 90.

[16]   ECF No. 22-1 at 40, Minute Entry, 11/19/2003; *see also* ECF No. 22-1 at 41, Minute Entry, 11/10/2003; ECF No. 22-1 at 93-95, Order for DNA Testing.   Judge Salvatore Panzeca served as Judge of Section "B" at the time.

[17]   ECF No. 22-1 at 75, Motion for Enforcement of Court Order dated January 10, 2004. The file stamp shows it was filed on February 9, 2004.

[18]   ECF No. 22-3 at 79, Fourth Circuit Writ No. 2004-K-0469.

[19]   ECF No. 22-3 at 77, *State v. Vicks*, 2004-K-0469 (La. App. 4 Cir. Apr. 19, 2004).

[20]   ECF No. 22-1 at 114-19.   His cover letter is dated July 7, 2004.   The motion is stamped as filed on August 6, 2004.

[21]   ECF No. 22-1 at 20, Minute Entry, 1/28/2005.   The court appointed "The

another order for DNA testing was signed by Judge Lynda Van Davis.[22]    A minute entry from

July 8, 2005, states that more DNA testing is being done.[23]    On December 4, 2006, Vicks

appeared with counsel for a post-conviction relief hearing.    The minute entry for that date

provides that DNA testing was completed, and the test results were inconclusive because of

the small size of the testing sample.    Counsel for Vicks suggested that the sample could be

sent to another testing company that has had more success with small samples.    Vicks

chose at that time to pursue his non-DNA post-conviction relief issues.    It also reflects that

Vicks has requested public records and the court is awaiting his post-conviction

application.[24]

On May 18, 2007, Vicks filed a motion to enforce the order that the District Attorney

provide him records and that the Innocence Project provide him an attorney for post-

conviction proceedings.[25]    On November 9, 2007, the state district court denied the motion

to enforce.[26]

---

Innocence Project" and the minute entry reflects that David Park appeared on this date. *See also* letter from Innocence Project in response.    ECF No. 22-1 at 111.

[22]   ECF No. 22-1 at 101, Order for DNA Testing.    The representatives for the parties, Walt Leger and David Park, differ from the prior order and the copy of the order provided in the state court record is not signed by either counsel.

[23]   ECF No. 22-1 at 16, Minute Entry, 7/8/2005.

[24]   ECF No. 22-1 at 11, Minute Entry, 12/4/2006.

[25]   ECF No. 22-1 at 451, Motion to Enforce.    The motion itself is undated, but it has a file stamp date of May 18, 2007.

[26]   The ruling itself is not contained in the state court record, but it is referenced in

Meanwhile, on October 8, 2007, he filed a writ of mandamus with the Fourth Circuit involving his inability to obtain the District Attorney's file.   On December 21, 2007, the appellate court denied the writ application stating that the district court is not the custodian of the file of the district attorney, and he must request the file from the District Attorney's Office.[27]

On or about June 23, 2008, Vicks filed another application for a writ of mandamus with the Louisiana Fourth Circuit.[28]   On August 6, 2008, the appellate court denied relief with stated reasons:

> On the showing made, we decline to exercise our supervisory jurisdiction. The relator asserts that he has not received a decision from Section B of Criminal District Court on his application for post-conviction relief, but he fails to identify the relief he seeks.   We are unable to ascertain any reason for a request of a hearing or any claims that might be made at same.[29]

On or about December 4, 2008, he filed a writ of enforcement with the Louisiana Fourth Circuit requesting an order directing the Clerk of Court for Orleans Parish Criminal District Court and the District Attorney to provide the documents.[30]   On December 18, 2008, the court of appeal denied the writ of enforcement finding no error in the district

---

the Louisiana Fourth Circuit's writ ruling at ECF No. 22-3 at 97.

[27]   ECF No. 22-3 at 89, *State v. Vicks*, 2007-K-1490 (La. App 4 Cir. Dec. 21, 2007).

[28]   ECF No. 22-3 at 105, Fourth Circuit Writ Application No. 08-K-0847.

[29]   ECF No. 22-3 at 103, *State v. Vicks*, 08-K-0847 (La. App. 4 Cir. Aug. 6, 2008).

[30]   ECF No. 22-3 at 99, Writ of Enforcement.

court's ruling of November 9, 2007.[31]

On or about February 3, 2011, Vicks filed another petition for writ of mandamus with the Louisiana Fourth Circuit concerning his inability to obtain the district attorney's file.[32] That petition was denied on March 3, 2011.[33]

On October 24, 2011, Vicks submitted his second Uniform Application for Post-Conviction Relief to the state district court. In that application, he claimed that he was denied the right of cross-examination and confrontation because he was unable to confront the DNA analyst who performed the testing analysis used against him at trial.[34] On February 22, 2012, after not receiving a ruling on his application, he filed a petition for writ of mandamus with the Louisiana Fourth Circuit.[35] On March 7, 2012, that writ was granted for the purpose of transferring the application to the district court for consideration.[36] On April 2, 2012, the district court denied his application for PCR as untimely.[37] He did not

---

[31] ECF No. 22-3 at 97, *State v. Vicks*, 2008-K-1483 (La. App. 4 Cir. Dec. 18, 2008).

[32] ECF No. 22-3 at 114, Petition for Writ of Mandamus. It was stamped as filed on February 3, 2011. It may have been signed on Jan. 30, 2011, but the signature date is unclear because it does not contain a month. *Id.* at 117.

[33] ECF No. 22-3 at 112, *State v. Vicks*, 2011-K-0163 (La. App. 4 Cir. Mar. 3, 2011).

[34] ECF No. 22-4 at 11, Exhibit A, PCR application signed Oct. 24, 2011 (pg. 16), attached to Fourth Circuit Writ No. 2012-K-0230.

[35] ECF No. 22-4 at 5, Fourth Circuit Writ 2012-K-0230. The petition is undated, but it was stamped as filed on Feb. 22, 2012.

[36] ECF No. 22-4 at 2, *State v. Vicks*, 2012-K-0230 (La. App. 4 Cir. Mar. 7, 2012).

[37] The record does not contain a copy of the written judgment denying his second

8

challenge the ruling in the courts of appeal.

On or about May 10, 2013, he submitted his third Uniform Application for Post-Conviction Relief to the state district court.[38]   In that application, he raised three claims for relief:   (1) the State suppressed *Brady* material; (2) he was denied the right to confrontation based on a newly discovered criminal investigation report and forensic report; and (3) trial counsel rendered ineffective assistance because he failed to conduct adequate investigation to discover these reports and present a proper defense at trial.   On August 13, 2013, after not receiving a ruling, he filed a petition for writ of mandamus with the Louisiana Fourth Circuit.[39]   On August 28, 2013, that writ was granted for the purpose of transferring the application to the district court for consideration.[40]   On November 5, 2013, Vicks wrote to the Louisiana Fourth Circuit asking for enforcement of its previous order.[41] On January 16, 2014, Vicks filed a petition for writ of mandamus with the Louisiana Fourth Circuit requesting enforcement of the order.[42]

---

PCR application.   However, *see* ECF No. 22-1 at 282, PCR Judgment denying third PCR application that references the judgment denying his second PCR application.

[38]  ECF No. 22-4 at 41, PCR attached to Fourth Circuit Writ No. 2013-K-1162.   The application was signed and dated May 10, 2013. The district court referenced a filing date of May 30, 2013. See ECF No. 22-1 at 282.

[39]  ECF No. 22-4 at 31, Fourth Circuit Writ Application.

[40]  ECF No. 22-4 at 28, *State v. Vicks*, 2013-K-1162 (La. App. 4 Cir. Aug. 28, 2013).

[41]  ECF No. 22-4 at 71.

[42]  ECF No. 22-4 at 78, Fourth Circuit Writ 2013-K-0172.   The writ application is

On February 10, 2014, the Louisiana Fourth Circuit issued an order for the district court to consider the transferred PCR application and submit proof of compliance (*i.e.,* a copy of its judgment on the application).[43]    On February 13, 2014, the state district court denied Vicks' third application for post-conviction relief under Louisiana Code of Criminal Procedure article 930.3 because (1) his application is time-barred; (2) he failed to prove the existence of newly discovered evidence that would have likely changed the outcome at trial; (3) he did not establish a violation of his Sixth Amendment right to confrontation; and (4) he has not met the burden required to prove ineffective assistance of counsel.[44]    On February 25, 2014, the Louisiana Fourth Circuit denied his petition for writ of mandamus because the district court had complied with its order and denied the PCR application.[45]    On April 15, 2014, the Louisiana Fourth Circuit denied his related supervisory writ application challenging the district court's denial of PCR.[46]    On March 27, 2015, the Louisiana Supreme Court summarily denied relief.[47]

---

dated January 16, 2014.    It was stamped as filed February 13, 2014.

[43]  ECF No. 22-4 at 69, *State v. Vicks*, 2013-K-1599 (La. App. 4 Cir. Feb. 10, 2014).

[44]  ECF No. 22-1 at 282-89, Judgment of 2/13/2014 denying PCR #3.    *See also* ECF No. 22-1 at 8, Minute Entry, 2/13/2014.

[45]  ECF No. 22-4 at 75, *State v. Vicks*, 2014-K-0172 (La. App. 4 Cir. Feb. 25, 2014).

[46]  ECF No. 22-5 at 3, *State v. Vicks*, 2014-K-0346 (La. App. 4 Cir. Apr. 15, 2014).

[47]  *State ex rel. Vicks v. State*, 2014-KH-1048 (La. 2015), 161 So.3d 652; ECF No. 22-6 at 68.

After the ruling by the Louisiana Supreme Court in 2015, the Docket Master reflects that Vicks filed only one other application for post-conviction relief on or about December 28, 2022.    On January 10, 2023, the district court denied relief.[48]    The state court record does not contain a copy of the application or ruling.

On February 11, 2025, Vicks submitted his federal petition for habeas corpus relief.[49] In his original filing, he sets forth 11 claims for relief:

Claim One: Petitioner's conviction and sentence was obtained in violation of due process of law 14th Amendment and in violation of Article III case or controversy [standing doctrine] requirements.

Claim Two: Respondent State of Louisiana lacked standing in the trial court for failure to allege it suffered or will suffer a injury-in-fact due to the petitioner allegedly violating the law.

Claim Three: The trial court never had subject matter jurisdiction due to respondent State of Louisiana lacked standing, in other words, the trial court lacked subject-matter jurisdiction

Claim Four: Actual Innocence combined with insufficiency of the evidence to convict and violation of due process of law claim

Claim Five: Insufficiency of the evidence to convict

Claim Six: Lack of corpus delecti or no corpus delecti

Claim Seven: The indictment and/or complaint was insufficient and defective due to it never alleged the respondent State of Louisiana suffered an injury-in-fact. The indictment and/or complaint merely alleged violations of laws.

Claim Eight: No cognizable Article III injury alleged in indictment and/or

---

[48]  ECF No. 22-1 at 7, Docket Master entries for 12/28/2022 and 1/10/2023.

[49]  ECF No. 1, 5, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus and Memorandum in Support.

complaint by the respondent State of Louisiana

Claim Nine: The case has become moot

Claim Ten: Lack of Article III redress ability of requested relief

Claim Eleven: The respondent State of Louisiana does not possess the capacity to sue[50]

His corrected form application lists two claims for relief: (1) the State of Louisiana lacked standing and (2) the trial court lacked subject matter jurisdiction.[51]    The State does not address the timeliness of the federal petition.    Rather, the State contends that the claims lack merit, and, alternatively, that the claims are unexhausted and procedurally defaulted.[52] Vicks filed a traverse to the State's response.[53]

## Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts adduced at trial:

The mother of the then ten year old victim began searching for her when she did not return from a corner store after having been gone about a half an hour. Near the store, the mother asked a neighbor, Ina Davis, if she had seen the child. Ms. Davis said she had not. Ms. Davis asked the mother if she could hear a child's screams coming from behind an abandoned house. The mother told the store owner to call the police. She called out the child's name, heard screams and then a muffled sound from behind a house, went behind the house while banging and screaming loudly, and heard the sound of someone jumping

---

[50]  ECF No. 1, 5-1 at 7-8.

[51]  ECF No. 5.

[52]  ECF No. 23, State's Response at 8 n. 5 and 11 n. 6.

[53]  ECF No. 24.

the fence.

The victim appeared, naked from the waist down, with dark pieces of material around her neck and one wrist. She was frightened and shaking and told her mother she had been raped. The police arrived within two minutes. The mother was so upset she got sick. The police took mother and daughter to the hospital.

Ina Davis testified that she heard a child screaming, "Help, Help, Help, please somebody help me, Help me, Help me," coming from an abandoned house that is behind Bob's Grocery Store and that is very near her own house. She called 911. She ran into the street and found the child's mother looking for her, and together they went toward the house.

Officers responded to the report of screams at the intersection of St. Roch and Urquhart between 9:00 and 10:00 p.m. The victim was crying and upset, and her hands were bound so tightly that she was in pain. The officers found a snack and a soft drink in the back yard of the abandoned house, and a t-shirt on the sidewalk in front of the house.

At the scene, Sergeant Claude Flot spoke to Lillie Mae Davis. She testified that she had seen a man, wearing a black t-shirt and dark jeans, talking to the victim in front of the store. She stopped to speak to the man (the defendant) because she thought he was Donald Vicks. The defendant said he was Donald Vicks's twin brother, Allen, and that Donald was in jail. She said no more than ten minutes passed between her seeing the defendant with the victim and then hearing the commotion in the neighborhood.

The parties stipulated that Donald Vicks was in jail the day of the crime.

An anonymous witness on the scene said the suspect lived at 2131 Marais Street, and the officers immediately went there.

Sergeant Flot, Detective Arnould Williams and Officer Dewight Roussive went to the house, and the door was answered by the owner, Ken Lintingua. Williams told Lintingua he was investigating a rape and gave Lintingua a description and a name. Lintingua let the officers into the house and said that the defendant did in fact live there. The officers went into the house and spoke to another resident of the house, Sabrina Seals, who said the defendant had just gone out of the rear door. He was arrested as he tried to flee.

Seals said she had been living at 2131 Marais with Ken Lintingua, who is her cousin, and Donald and Allen Vicks, who are identical twins. The house was Ken's, and he paid the bills. Ken and the defendant were lovers. She said the defendant had left the house around 5:00 p.m., wearing all black. He returned around 10:00 p.m. and was sweating. She gave the officers a pair of black jeans she had seen the defendant wearing when he left the house. She also identified the black shirt found at the scene as the one the defendant had been wearing.

The officers took the defendant to the hospital where the victim identified him. He was handcuffed and not wearing a shirt at the time.

Dr. Janet Rossi examined the victim and found scratches and bruises on her face consistent with her having been choked, and scratches and cuts on her wrists and hands. Rossi could find no trauma to her genitals, but the victim told her that the penetration had been a quick rather than a prolonged process. The victim said she and her mother had returned home from a school pageant, and she asked her mother if she could go to the store to get a sandwich. Her mother placed the order, and she walked the block and a half to the store. The order was not ready, so she began playing with her friend Cassandra, a clerk in the store. The defendant started asking the girls their age, and they told him Cassandra was sixteen and to leave them alone. The victim told the defendant that she was ten, and the victim guessed his age as nineteen. He left the store, and she waited on the steps where Cassandra could watch her. She saw two friends, fourteen and eleven, playing nearby. The defendant again approached her, asked her whether she had a boyfriend to which she responded "no", and whether she would be his girlfriend to which she said, "no." The defendant then told her that he had had an eleven year old girlfriend with whom he had not had sex, but with whom he had made love, and that she had been hit by a car.

After the victim got her food and left the store, she noticed the defendant following her. She turned around and walked back in his direction so that he would not know where she lived. She crossed the street, and so did he. She saw two women walk up to the man and start talking to him. She thought he had stopped following her, so she stopped near the abandoned house to catch her breath because she had bronchitis and had gotten nervous. At that point, she was grabbed from behind and dragged into the yard.

The defendant told her that he would cut her throat if she did not stop screaming, but she continued to scream anyway. He tried to get her into the house, but she successfully struggled against him. The defendant took off his

black t-shirt, tore it into three pieces, and used the pieces to tie and gag her. He made her take off her shorts and underwear. She tried to get away, but the defendant tried to choke her and threatened to kill her. She felt her "eyes closing" from being choked. He made her lie down on the ground on her stomach. He tried to put his "private part" into her rear, but when he was unsuccessful, he turned her over and put his "private part" inside her. She then heard her mother calling her. The defendant ran, and she later identified him at the hospital. She identified him again at trial.

The defendant said he had not gone out the night of the crime, but had stayed home with his homosexual lover, Ken. He said he was putting the garbage out when he was arrested. He denied wearing black jeans. He said he had never met the victim.

He called Dwayne Spears, an inmate at parish prison, who said that he had seen the defendant at gay bars, that he knew the defendant was gay, and that he and other inmates had slept with him.[54]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both. A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The

---

[54] *State v. Vicks*, 2000-KA-1700 (La. App. 4 Cir. 9/26/01), 798 So.2d 308, 309-11.

15

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 562 U.S. 921 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th

16

Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

As previously discussed, Vicks' original filing set forth 11 claims for relief that, for the most part, dealt with standing and lack of subject matter jurisdiction. His corrected form petition alleged only lack of standing and subject matter jurisdiction. The State acknowledges that although the full list of claims mainly challenges standing and subject matter jurisdiction, Vicks arguably raises a claim regarding sufficiency of the evidence, which was considered on direct appeal by both the Louisiana Fourth Circuit and the Louisiana Supreme Court.[55] Therefore, the federal application will be liberally construed as asserting

---

[55] The State notes that "while he purports to assert actual innocence, a read of the memorandum reveals that it is nothing more than a sufficiency of the evidence argument." ECF No. 23 at 6 n. 3. The Court agrees that Vicks has not stated a free-standing "actual innocence" claim in his federal petition, and that the claim is essentially one of insufficient

three grounds for relief: (1) the State of Louisiana lacked standing; (2) the trial court lacked subject matter jurisdiction; and (3) the evidence was insufficient to support the conviction for aggravated rape.    The State argues that the first two claims are not cognizable on federal habeas relief and that all three claims lack merit.[56]    The State also contemplates the possibility that the first two claims were not exhausted in the state courts and that Vicks has no state remedies available now, and raises the procedural-default doctrine in the alternative, should the court find that the claims were not fairly presented to the state courts. While Vicks appears to concede that he did not exhaust the first two claims by raising them in the state courts, he argues that it was unnecessary because it would have been futile and the claims may be raised at any stage of the proceedings.[57]

I.      *Procedural Default - Standing and Subject Matter Jurisdiction Claims*

With respect to Vicks' first two claims regarding lack of standing and subject matter jurisdiction, he alleges the following:

The petitioner is now filing this petition to seek to overturn the conviction and

---

evidence to support the conviction for aggravated rape.    However, the claim will be considered to the extent he asserts actual innocence to excuse the procedural default.    *See* ECF No. 24, Vicks' Traverse.    To the extent any of his claims besides sufficiency do not relate to standing or subject matter jurisdiction, he offers no argument in support of the claims, and, regardless, those claims would likewise be unexhausted and procedurally defaulted.

[56] The State does not raise a statute of limitations defense in this case.    *Day v. McDonough*, 547 U.S. 198, 209 (2006) ("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition.").    And Vicks has not addressed the issue.    The Court declines to consider timeliness, *sua sponte*, on the record presented.

[57] ECF No. 5 at 13-14 and 5-1 at 6.

sentence also to have the complaint and or indictment dismissed on grounds that the indictment and/or complaint failed to allege that the party plaintiff in the case has or will have suffered an injury-in-fact [The party plaintiff is the State of Louisiana] which is a violation of Article III standing doctrine requirements.

Also on the grounds that the petitioner is being unconstitutionally imprisoned by the State of Louisiana in violation of due process of law 14th Amendment and Article III case or controversy standing doctrine due to the State of Louisiana lacking standing in the trial court for failure to allege in its indictment and/or complaint that it suffered an injury-in-fact due to the petitioners allegedly illegal conduct or violation of law.    The petitioner also is contesting or challenging the trial courts lack of subject-matter jurisdiction due to the plaintiff in the trial court lacked standing for failure to allege in its indictment and or complaint that it suffered or will suffer an injury-in-fact due to the defendant allegedly violating the law.[58]

The record demonstrates that these claims were never fairly presented to any state court either on direct appeal or collateral review.    The State points to Vicks' 2003 post-conviction proceedings as evidence that Vicks may have exhausted his claims, but the claim raised in those proceedings challenging the indictment and lack of subject matter jurisdiction stemmed from a different factual premise, namely an alleged discriminatory process for selecting grand jury forepersons.[59]    That claim differs in kind from those presented in these federal proceedings.

The United States Fifth Circuit Court of Appeals has succinctly explained the interrelated concepts of exhaustion and procedural default:

A state prisoner normally must exhaust all available state remedies before he can apply for federal habeas relief. *See Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct.

---

[58]  ECF No. 5-1 at 4-5.

[59]  ECF No. 22-1 at 334, State PCR Claim No. 1.

19

734, 740, 29 L.Ed. 868 (1886). To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971). The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition. *Anderson v. Harless*, 459 U.S. 4, 6–7, 103 S.Ct. 276, 277–78, 74 L.Ed.2d 3 (1982); *Vela v. Estelle*, 708 F.2d 954, 958 (5th Cir.1983).

A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default. If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the prisoner has procedurally defaulted his federal habeas claim. *Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *see Harris v. Reed*, 489 U.S. 255, 262–63, 109 S.Ct. 1038, 1043–44, 103 L.Ed.2d 308 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977). A procedural default also occurs when a prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1.

*Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (footnote omitted).    Thus, when a petitioner (such as Vicks) fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims to meet the exhaustion requirement would now find the claims procedurally barred, the claims are considered defaulted in federal court.    In this case, there is little doubt that any new attempt by Vicks to exhaust his standing and subject matter jurisdiction claims would be rejected by the state courts on procedural grounds.    Vicks did not raise the claims during multiple rounds of post-conviction proceedings and if he attempted to file another application for post-conviction relief asserting the claims now, his application would clearly be denied as untimely under

20

Louisiana Code of Criminal Procedure article 930.8.[60]   Additionally, the state courts would almost certainly reject the application as successive and thus procedurally barred under Louisiana Code of Criminal Procedure article 930.4 (F).[61]   The procedural bars present here constitute adequate and independent state procedural grounds and prevent federal habeas corpus review of his defaulted claims.   *See*, *e.g.*, *Williams v. Dep't of Corr.*, 444 F. App'x 833, 834 (5th Cir. 2011) (recognizing Louisiana Code of Criminal Procedure Article 930.8 as an independent and adequate state procedural bar); *Ardison v. Cain*, 264 F.3d 1140, 2001 WL 822445, at *3-4 (5th Cir. 2001) (recognizing the successive-application rule under Louisiana Code of Criminal Procedure Article 930.4 as independent and adequate).

Where, as here, the state procedural rules are "independent" and "adequate," "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."   *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).   Vicks has not attempted in his briefs to establish cause to excuse the procedural default.   Because he fails to establish sufficient cause to excuse a procedural default, the Court need not address the issue of prejudice.   *See Smith v. Murray*, 477 U.S. 527, 533 (1986).   When a petitioner fails to

---

[60] Article 930.8 generally requires that a petitioner file his post-conviction relief application within two years of the date on which his conviction and sentence became final. Although there are exceptions provided in the article, those exceptions to do not appear to be applicable in this case.

[61] Article 930.4(F) provides that a "successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

meet the "cause and prejudice" test, a federal court is to consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice." That exception is a limited one which exists only if a petitioner makes a colorable showing that he is "actually innocent." *See Bagwell v. Dretke*, 372 F.3d 748, 757 (5th Cir. 2004); *Lucas v. Johnson*, 132 F.3d 1069, 1077 (5th Cir. 1998).

Vicks claims that "no violation of law occurred because the alleged rape victim was never raped by the petitioner [since] all DNA testing was negative for the petitioner DNA ruling out the petitioner from being the perpetrator."[62] This argument was addressed and rejected by the state courts as part of Vicks' claim that the State violated *Brady* by failing to disclose a criminal investigations report and hospital forensic report. The reports did not reveal the presence of blood, hair, or seminal fluid; they mentioned a questionable healed injury and scarring; and they stated no conclusory findings due to a limited unsatisfactory exam and uncooperative ten-year-old patient.[63] The state district court found that the evidence was neither newly discovered nor unavailable to Vicks or his counsel at the time of trial.[64] In fact, the State stipulated at trial to the fact that all analysis of the materials tested

---

[62] ECF No. 5-1 at 10.

[63] *Brady v. Maryland*, 373 U.S. 83 (1963).

[64] ECF No. 22-1 at 282-85, Judgment denying PCR. *See also* pg. 196 (Supplement with Reports at 201-11), and 290-316, PCR Application with Memorandum in Support. Vicks references and attaches the alleged DNA evidence in support of his claim to his federal application as Exhibit B at ECF No. 5-1.

was negative.[65]    And the physician who conducted the pediatric sexual-assault examination testified that the examination did not indicate any seminal fluid.[66]    Thus, Vicks has not presented any new reliable evidence to establish his actual innocence on the underlying convictions that would allow this Court to consider his defaulted claims.    Accordingly, , the Court finds Vicks' claims regarding standing and subject matter jurisdiction to be procedurally barred from federal review.

II.      *Merits Review - Standing and Subject Matter Jurisdiction*

Even if the first two grounds argued by Vicks were not procedurally defaulted, the State is correct that neither presents a cognizable claim for federal habeas relief.    his intertwined claims that the state criminal indictment was defective because it did not provide standing (*i.e.,* it failed to allege the State suffered an injury-in-fact due to Vicks' illegal conduct) or subject matter jurisdiction (due to the aforementioned omission) do not present federal constitutional claims for habeas review.[67]    28 U.S.C. 2254(a); *see also*, *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (emphasizing that "it is not the province of a federal

---

[65] ECF 22-2, Trial Transcript at 203-04.    Vicks also requested additional DNA testing during post-conviction proceedings which came back inconclusive. ECF No. 22-1 at 11, Minute Entry, 12/4/2006.

[66] ECF No. 22-2, Trial Transcript at 216-25 (Direct Examination) and 226-27 (Cross-Examination).

[67] Vicks does not claim that any of the due process notice requirements were lacking in his criminal prosecution.    *See*, *e.g.*, *Landry v. Cain*, Civ. Action No. 14-0372, 2017 WL 4545212, at *13 (M.D. La. Aug. 28, 2017), *adopted*, 2017 WL 4544604 (M.D. La. Oct. 11, 2017).

habeas court to reexamine state-court determinations on state-law questions," but rather habeas review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994) ("The question whether a defective state indictment confers jurisdiction on the state trial court is a matter of state law.") (citing *Lavernia v. Lynaugh*, 845 F.2d 493 (5th Cir. 1988); *Bueno v. Beto*, 458 F.2d 457 (5th Cir.), *cert. denied*, 409 U.S. 884, 93 S.Ct. 176, 34 L.Ed.2d 140 (1972)); *Randall v. Reyes*, Civ. Action No. 23-1826, 2026 WL 543746, at *6 (D. Or. Jan. 27, 2026), *adopted*, 2026 WL 540908 (D. Or. Feb. 26, 2026); *Thomas v. Thornell*, Civ. Action No. 23-0385, 2024 WL 3997617, at *5 (D. Ariz. Aug. 15, 2024) (petitioner's challenge to the state's assertion of jurisdiction over his criminal prosecution is not a federal constitutional issue and cannot be raised in a federal habeas petition), *adopted*, 2024 WL 4347926 (D. Ariz. Sep. 30, 2024).

Recently, in rejecting a claim that the trial court lacked subject matter jurisdiction over a criminal case, the Louisiana First Circuit Court of Appeal explained:

> The Louisiana Constitution grants a district court original jurisdiction over all civil and criminal matters and vests district courts with "exclusive original jurisdiction of felony cases."   La. Const. art. V, § 16; *see State v. Davenport*, 2013-1859 (La. 5/7/14), 147 So.3d 137, 144.   Courts have the jurisdiction and powers over criminal proceedings that are conferred upon them by the constitution and statutes of this state, except as their statutory jurisdiction and powers are restricted, enlarged, or modified by the provisions of this Code. La. Code Crim. P. art. 16.   A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction.   La. Code Crim. P. art. 17.   Thus, the district courts have either exclusive or concurrent original jurisdiction in any criminal

24

matter, except when the Constitution itself vests jurisdiction in another tribunal.    *Pope v. State*, 99-2559 (La. 6/29/01), 792 So.2d 713, 717, n.9.

*State v. Cheramie*, 2025-0060, 2025 WL 3762760, at *5 (La. App. 1 Cir. 12/30/25).    That appellate court concluded that "[t]he felony charges instituted against the defendant by the Lafourche Parish District Attorney in this case are a criminal matter and because the trial of felony cases is within the exclusive original jurisdiction of the criminal district court, the Seventeenth Judicial District Court had subject matter jurisdiction in this matter."    *Id*. The same would be true in this case concerning the felony charges instituted against Vicks by the Orleans Parish District Attorney in Orleans Parish Criminal District Court.

Here, Vicks contends only that the trial court lacked subject matter jurisdiction because his indictment failed to allege an injury-in-fact to confer standing upon the State of Louisiana.    He cites no controlling legal authority for his standing and jurisdictional arguments in the context of criminal matters, and none exists.    *See United States v. Johnson*, No. 17-CR-105, 2023 WL 8651421, at *2-5 (M.D. Pa. Dec. 14, 2023) (rejecting as frivolous the argument that the federal district court lacked jurisdiction to enter the criminal judgment because the United States did not have standing to bring the criminal action against petitioner).    Relevant here, the *Johnson* Court stated that "[petitioner's] claims are unsupported by any relevant case law or intelligible argument and have been repeatedly rejected by Courts within the Third Circuit as well as throughout the United States."    *Id*. at *2.    As the State correctly contends, the "injury-in-fact" requirement for standing in a civil case does not apply in a criminal matter where the district attorney statutorily has, subject

25

to the supervision of the attorney general, "entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute."[68]   La. C.Cr.P. art. 61.   The district attorney has constitutional authority over criminal prosecutions.   *State v. Lafont*, 2023-0086 (La. App. 1 Cir. 9/15/2023), 375 So.3d 1002, 1009 (citing La. Const. art. V, § 26(B); La. C.Cr.P. art. 61).   For the reasons expressed, then, these intertwined claims also lack merit.

### III.   *Sufficiency of the Evidence for Aggravated Rape*

Vicks also claims that the evidence was insufficient to support his conviction for aggravated rape.   He argues that the evidence ruled him out as the perpetrator because the DNA testing came back negative.[69]   Essentially, he contends that the State had no direct evidence linking him to the crime.

The Louisiana Fourth Circuit Court of Appeal rejected the insufficient evidence claim on direct review:

> The defendant argues that the evidence was insufficient to support the conviction for aggravated rape, specifically he argues that the evidence was insufficient to prove penetration.
>
> This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in *State v. Ragas*, 98–0011 (La. App. 4 Cir. 7/28/99),

---

[68]   To the extent Vicks alleges a due process violation simply based on the purported defective indictment that failed to confer standing or subject matter jurisdiction, his claim fares no better.   *See United States v. Ndissi*, No. 25-143, 2026 WL 318836, at *7 (D. Vermont, Feb. 5, 2026) (finding no due process violation where signatures on the indictment indicated the lawful exercise of authority as attorneys for the government duly appointed by the Attorney General to their posts).

[69]   ECF No. 5-1 at 10.

26

744 So.2d 99, as follows:

> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Green*, 588 So.2d 757 (La. App. 4 Cir. 1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall*, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall*; *Green*; *supra*. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So.2d 1319 (La. 1992) at 1324.

> In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Shapiro*, 431 So.2d 372 (La. 1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from *Jackson v. Virginia*, *supra*, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. *State v. Wright*, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the *Jackson* reasonable doubt standard. *State v. Jacobs*, 504 So.2d 817 (La. 1987).

*Ragas* at p. 13–14, 744 So.2d at 106–107, quoting *State v. Egana*, 97–0318, p. 5–6 (La. App. 4 Cir. 12/3/97), 703 So.2d 223, 227–228.

Defendant was convicted of aggravated rape, a violation of La. R.S. 14:42. This court set out the elements of aggravated rape in *State v. Johnson*, 99–1117, pp. 6–7 (La. App. 4 Cir. 5/17/00), 764 So.2d 1113, *writ denied* 2000–2297 (La.

27

11/17/00), 774 So.2d 973:

> La. R.S. 14:42 defines aggravated rape as "a rape committed upon a person ... where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed ...[70][w]hen the victim is prevented from resisting the act because the offender is armed with a dangerous weapon." "Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.... Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime." La. R.S. 14:41.

*Johnson* at p. 6–7, 764 So.2d at 1118.

In *Johnson*, the victim claimed she was raped inside of her office after arriving in the morning. A medical examination revealed blunt trauma between her thigh and pelvis and to her right breast, but no seminal fluid or semen were found. The victim's dentist-employer testified that she was crying and upset when he arrived at the office shortly after the rape. The victim first stated to her dentist- employer and police officers that the defendant penetrated her with a knife with which he was armed, and/or his finger. However, she testified that she was emotionally distraught and did not want to confront the reality that the defendant had raped her. There were no cuts to the victim's vaginal region. This court found that the evidence was sufficient to support a conviction for aggravated rape.

In the recent case of *State v. Morgan*, 99–2685 (La. App. 4 Cir. 1/17/01), 779 So.2d 17, the conviction rested solely on the testimony of the victim with no physical evidence of a rape. However, the examining physician noted that the absence of seminal fluid or spermatozoa could be explained by ejaculation outside of the vagina, which the victim said happened in her case. The physician also said the absence of physical trauma could be attributable to a rape where there was not a lot of struggle involved. There was no hymeneal tissue present, but the physician could not say whether that was related to the rape.

In the instant case, the examining physician said the victim's tander, on a scale of one to five, was a three for her genitals. Tander is a scale of development

---

[70] The omitted language is the language that is applicable here: "when the victim is under the age of twelve years."

28

from childhood to adult. Four to five is considered mature. The physician said a tander of three "would allow penetration without leaving any kind of lesion and she [the victim] described the penis penetrating here as a rather kind of quick not prolonged process." This is consistent with the victim's testimony that the defendant jumped up when he heard the victim's mother calling the victim's nickname. Thus the lack of physical evidence of penetration does not mean that it did not occur. The trial judge found the victim's testimony that the defendant's penis had penetrated her credible.

A fact finder's credibility decision should not be disturbed unless it is clearly contrary to the evidence. *State v. Harris*, 99–3147, p. 6 (La. App. 4 Cir. 5/31/00), 765 So.2d 432, 435. "If credible, the testimony of a single witness may establish the elements of a crime beyond a reasonable doubt." *See State v. Hills*, 99–1750, p. 8 (La. 5/16/00), 761 So.2d 516, 522, footnote 8; *State v. Allen*, 94–1895, p. 7 (La. App. 4 Cir. 9/15/95), 661 So.2d 1078, 1084. Here, the trier of fact was the trial judge, and he found the victim more credible than the defendant. In fact the court stated:

> The Court would begin by noting that the victim in this matter ... is one of the best 11–year–old witnesses this court has seen in a sexual abuse type situation. The court believes her testimony was credible just like the court believes that the testimony of the defendant was totally incredible. His testimony was even contradicted by his own friends, by Sabrina [Seals].

Indeed, even a cold reading of the record supports a finding that the witness was a composed, intelligent child who gave her testimony in a straightforward manner.

On the other hand, contrary to the defendant's testimony that he was home with his lover, a neighbor who knew his identical twin and recognized him because of that fact testified that she had seen him with the child only minutes before the crime. The defendant went so far as to speak to her and gave her his name and his identity as being the twin brother of the man she knew. The defendant's friend, Sabrina Seals, said the defendant had gone out for the night and has not been at home as he alleged.

The trial court did not err in finding that the victim was credible in testifying that penetration occurred.

The evidence was sufficient.

29

This assignment is without merit.[71]

The Louisiana Supreme Court summarily denied Vicks' related writ application.[72]

Because an insufficient-evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).    Vicks has made no such showing.

Under federal law, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."    *Id*. at 319.    Accordingly, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)) (emphasis added).    Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review

---

[71]  *State v. Vicks*, 798 So.2d at 313-15 (footnote in original).

[72]  *State ex rel. Vicks v. State*, 2002-0199 (La. 2002), 831 So.2d 276.

mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."    *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the factfinder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does not apply in federal habeas corpus proceedings. In these proceedings, only the *Jackson* standard need be satisfied, even if state law would impose a more demanding standard of proof.    *Foy v. Donnelly*, 959 F.2d 1307, 1314 n. 9 (5th Cir. 1992); *Higgins v. Cain*, Civ. Action No. 09-2632, 2010 WL 890998, at *21 (E.D. La. Mar. 8, 2010), *aff'd*, 434 F. App'x 405 (5th Cir. 2011); *Williams v. Cain*, Civ. Action No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), *aff'd*, 408 F. App'x 817, 821 (5th Cir. 2011); *see also Coleman*, 566 U.S. at 655 ("Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law.") (citation and internal quotation marks omitted).

Vicks argues that he cannot be convicted of aggravated rape if there was no scientific DNA evidence positively linking him to the rape, which discounts (1) the victim's testimony

31

surrounding the rape, (2) other witnesses' testimony regarding Vicks' whereabouts that evening and (3) his encounter with the victim not long before the rape occurred.    At trial, Vicks testified in his own defense and explained that every witness for the State was mistaken, including the witness who saw him and spoke to him that evening.    He testified that he did not leave the house that night and had no interaction whatsoever with the victim. The trial court rejected the defense theory and found Vicks' testimony not credible.    This Court is not authorized on federal habeas review to substitute its interpretation of the evidence or reevaluate the credibility of witnesses in place of the factfinder, which in this case was the judge because Vicks chose a judge trial over a jury.    *Weeks v. Scott*, 55 F.3d at 1062.    Where, as here, a petitioner's insufficient-evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief.    *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d at 695 ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93–5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, Civ. Action No. 11–2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012); *Picou v. Cain*, No. 06–6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).    Furthermore, even a single witness's testimony, if believed by the factfinder, is sufficient to prove identity and to support a conviction.    *See Peters v. Vannoy*, Civ Action No. 17-2598, 2018 WL 7917923, at *7 (E.D. La. July 19, 2018) (citing *United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983), *adopted*, 2019 WL 1469438 (E.D. La.

32

Apr. 3, 2019); *accord Davis v. Cain*, Civ. Action No. 15-6652, 2016 WL 4537915, at *7 (E.D. La. May 24, 2016), *adopted*, 2016 WL 4529877 (E.D. La. Aug. 30, 2016); *Colbert v. Cain*, Civ. Action No. 14-2472, 2016 WL 4186551, at *11 (E.D. La. Apr. 12, 2016), *adopted*, 2016 WL 4161257 (E.D. La. Aug. 5, 2016); *Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012)).   As the state appellate court reasoned in Vicks' case, given the victim's compelling identification and testimony, which the trial court found credible, and the other corroborating evidence as to Vicks' whereabouts that evening and his contact with the victim, the evidence sufficed to support the aggravated rape conviction.

The state court's determination under *Jackson* must be accorded deference under Section 2254(d).   That standard does not permit a federal court to overturn a conviction unless the state court's determination under *Jackson v. Virginia* was not simply incorrect, but so wrong as to be an objectively unreasonable application of *Jackson*.   Here, the state court articulated the proper controlling law and reasonably applied the governing legal principles to the evidence adduced at trial.   When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational. For these reasons, Vicks cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## **<u>RECOMMENDATION</u>**

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that Vicks' application

for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[73]

New Orleans, Louisiana, this  23rd  day of _____ April _____, 2026.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[73] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.